UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA ADAMS,

                           Plaintiff,

    -against-

C.O. M. GEORGE, an employee of the N.Y.S. Dept.
of Corrections and Community Supervision, *in his
individual capacity,*

                           Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/8/2020

18-cv-2630 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Anna Adams ("Plaintiff"), proceeding *pro se,* commenced this action on March 22, 2018, asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), against Defendant Correctional Officer M. George ("Defendant"). She seeks compensatory and punitive damages for alleged violations of her constitutional rights while confined at the Bedford Hills Correctional Facility ("Bedford Hills"). (*See* Complaint ("Compl."), ECF No. 2). Before this Court is Defendant's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), or alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").[1] (*See* Defendant's Motion to Dismiss ("Def's Mot. Dismiss"), ECF No. 21.)  For the following reasons, Defendant's motion is GRANTED without opposition.

## BACKGROUND

### FACTS ALLEGED

The below facts are taken from Plaintiff's pleadings and matters of which the Court may

---

[1] Attached to Defendant's motion to dismiss is a notice pursuant to Local Civil Rule 12.1, which indicates to the litigant, Plaintiff, that the Court may treat the motion as one for summary judgement under Rule 56. (Def's Mot. Dismiss, ECF No. 21, Attach. 2)

take judicial notice and are accepted as true for purposes of this motion.

Plaintiff is an inmate currently detained at Bedford Hills since May 11, 2016. On Friday, November 24, 2017 at approximately 1:20 PM, Plaintiff and approximately nine other Muslim inmates sought access to the designated Muslim Chapel of the Bedford Hills Campus. (Compl. at 3.). Plaintiff and the other inmates intended to use the chapel to conduct Jumah Prayer Services, which is "practiced at 1:00 to 2:00 [PM] on Fridays all over the entire world." (*Id.* at 5.)

Once the inmates were fully gathered in the lobby of the chapel, they were denied access by Defendant. (*Id.* at 3.). When one of the inmates questioned the Defendant as to why they were not being allowed in, Defendant replied, "[y]ou must have the chaplain to go in." (*Id.*). Plaintiff requested a supervisor and Sergeant Cowan appeared soon thereafter. When Sergeant Cowan was in the process of opening the entrance to the chapel, Defendant interrupted him and told him to "call the watch commander." (*Id.*). Plaintiff, and the other inmates, waited in the lobby for Sergeant Cowan to resolve the situation and to address Defendant's alleged misconduct but to no avail. (*Id.*)

At approximately 1:57 PM, Plaintiff and the other inmates began their Jumah Prayer, collectively, in the lobby of the chapel. (*Id.*). Their prayer, however, was "abruptly interrupted" by the Defendant who persistently suggested to Sergeant Cowan that the inmates stop their prayer. (*Id.*) Thereafter, Defendant directed Plaintiff to stand against the wall, which Plaintiff complied with. (*Id.*) At 2:04 PM, Plaintiff was eventually allowed access into the Chapel. (*Id.*) At that point, meaningful prayer was not possible because it was passed the prescribed time for Jumah Prayer. (*Id.*)

Prior to the incident, Plaintiff had lodged multiple grievances against the Defendant for "violating [her] right to practice [her] religion." (*Id.* at 2.) After the latest chapel incident, Plaintiff filed an additional five grievances against Defendant for harassment and for interfering with her religion. (*Id.* at 3). Defendant made several harassing statements to the Plaintiff in response to the multiple

grievances she filed. In one specific instance, Defendant stated, "[i]t doesn't matter how much you grieve me Ms. Adams, this is my prison I've been investigated many times and I'm still here, you don't run the show Ms. Adams. I do, so go ahead keep grieving me you won't get one American cent. [*sic*]" (*Id.*)

As a result of the various incidents and Defendant's comments, Plaintiff "suffered mental anguish". (*Id.*) Defendant's course of harassing conduct continued, including Defendant filing a false legal document stating that the Plaintiff had violated Rule 104.13—creating a disturbance. (*Id.* citing N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(5)(104.13) (2020)). The document falsely accused Plaintiff of leading the prayer in the lobby outside of the chapel, when in actuality it was inmate "Britney Austin" who did so. (*Id.* at 4.) Following a disciplinary hearing, Plaintiff was found "not guilty" due to a lack of "evidence to support" the allegation. (*Id.*).

Plaintiff alleges that she was "blatantly singled out from the other seven inmates" waiting by the chapel lobby. (*Id.*) She is the only one from the group who was been subjected to adverse treatment. (*Id.*) Since the chapel incident, Plaintiff was placed in keeplock, meaning she was "confined in a cell for twenty-three hours a day, for six days," lost inmate privileges, such as being denied daily communication via telephone with her children, daily showering, use of the law library, and computer access. (*Id.*) The loss of privileges exacerbated Plaintiff's anxiety. (*Id.*) Plaintiff suffers claustrophobia and post-traumatic stress disorder which she categorized as "extreme emotional distress." (*Id.*)

Plaintiff asserts she has exhausted all administrative remedies. She not only filed grievances but also appealed the initial determinations. Plaintiff attaches multiple documents to support her claim of exhaustion, including:

(1) A DOCCS' document dated October 10, 2017, entitled "Formal Grievance Complaint," bearing Grievance Number: BH-20,933-17, addressed to the Inmate Grievance Resolution Committee ("IGRC") regarding a complaint made by Plaintiff received Sept. 27, 2017 concerning being "[p]revented from [s]eeing Iman." The document appears to have been filed regarding Defendant's behavior prior to the November 24, 2017 chapel incident ("Chapel Incident");

(2)   A memo dated Nov. 29, 2017 responding to Plaintiff's complaint of "CO Harassment,"
dated Nov. 9, 2017. The document involves an occurrence prior to the Chapel Incident
and also appears to have been submitted to demonstrate that Plaintiff had filed several
earlier grievances against the Defendant;

(3)   A memo dated Nov. 30, 2017 from Superintendent J. Joseph, responding to Plaintiff's
letters regarding a misbehavior report and Jumah Services. The letter indicated that a
hearing officer will be assigned to preside over the matter and that Plaintiff will be
assigned a "Tier Assistants" to help prepare for the hearing;

(4)   A DOCCS document dated December 5, 2017, entitled "Formal Grievance Complaint,"
bearing Grievance Number: BH-21,006-17, referencing the Chapel Incident, which is
the subject of this action; and

(5)   A letter dated December 27, 2017, from Supervisor C. Brown of the IGP, affirming the
hearing officer's finding of no fault on the part of the Defendant and dismissing the
complaint referenced as Grievance Number: BH-21,006-17.

**Procedural History**

Plaintiff filed a formal grievance against the Defendant regarding the November 24, 2017

Chapel Incident. (Compl. at 9.) In response, Superintendent J. Joseph sent Plaintiff a memo dated

November 30, 2017, informing that a hearing officer was to be assigned to preside over the grievance

and issue a determination." (*Id.* at 11.) The memo also stated that Plaintiff was "never denied an

opportunity for Jumah." (*Id.*) Plaintiff purportedly appealed the hearing officer's determination, which

required her to appeal to the Inmate Grievance Program ("IGP") Supervisor. (*Id.* at 10.)

Plaintiff received a letter from the IGP Supervisor, dated Dec. 27, 2017, referencing Grievance

Number BH-21,006-17 (the Chapel Incident) which indicated that Plaintiff's appeal was dismissed by

the IGRC Committee. (*Id.*) The dismissal was purportedly based on Plaintiff's failure to offer any

additional information warranting a change in the hearing officer's decision, and as such, the alleged

false misbehavior grievance was deemed "dismissed & closed." (*Id.*) Missing from Plaintiff's

submission are documents regarding an appeal to the Central Office Review Committee ("CORC"), the

highest level of administrative review. Plaintiff thereafter commenced the instant action on March 22,

2018. (Compl., ECF No. 2.).

## STANDARD OF REVIEW

### SECTION 1983

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance,

regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not

itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred

by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*,

443 U.S. 137, 144 n.3 (1979); *see Paterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was

attributable to a person who was acting under color of state law, and (2) "the conduct deprived the

plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York,* No. 09 Civ.

5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 529 F.3d 121, 127 (2d

Cir. 2010). Therefore, there are two elements to a §1983 claim: (1) the defendant acted under color of

state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal

statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty of Westchester*, 136 F.3d

239, 245 (2d. Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347,354 (E.D.N.Y.

1999) (noting that Section 1983 "furnished a cause of action for violation of federal rights created by

the Constitution") (citation omitted).

### RULE 12(B)(6)

A Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted"

requires the Court to assess the complaint and determine whether the facts pleaded by the Plaintiff are

sufficient to meet the requirements of a cause of action. Fed. R. Civ. P. 12(b)(6). The Court is required

access the face of the complaint to determine whether the document contains enough factual allegations,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 507 (2007)).

While courts are required at this stage in proceedings to accept all factual allegations as true, the

Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550

U.S. at 555. As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," will not be accepted by the Court, as true. *Iqbal* at 678. The Court must

discard conclusory language and scour the complaint to ensure that enough facts have been alleged to

allow the Court to infer that the plaintiff has a plausible cause of action and is entitled relief.

In order to determine whether a complaint states a plausible claim for relief, the Court must

consider the context of the events which occurred and "draw on its judicial experience and common

sense." *Iqbal* at 662. A plaintiff must allege enough factual allegations to allow the Court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged" which "nudge [the]

claim…across the line from conceivable to plausible." *Iqbal* at 678–80.

Courts recognize the complexity of the law and affirm the public policy that all people within the

borders of the United States deserve equal access to justice and a right to be personally heard through

the legal process. To promote these ideals, parties have a right to "plead and conduct their own cases

personally." 28 U.S.C.A. § 1654. In recognition of the complexity and difficulty lawyers and lay persons

encounter, courts do not require a plaintiff to strictly plead every element of each cause of action along

with an exacting legal analysis, but only require that plaintiffs state "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. § 8.

Complaints filed by *pro se* litigants must be "construed liberally and interpreted 'to raise the

strongest arguments that they *suggest.*'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases) (emphasis in original). However, "the duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citing 2 *Moore's Federal Practice* §12.34[1][b], at 12–61). A *pro se* plaintiff's pleading must still "contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly* at 555).

At the preliminary stage in a proceeding, courts are loath to consider factual allegations which are not presented by the plaintiff. When considering a motion to dismiss, the Court is limited to "the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Documents attached to the complaint or incorporated by reference include any forms or records relied on by the plaintiff in bringing the lawsuit that are either in the plaintiff's possession or that the plaintiff knew of when commencing the action, or matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002). When presented with documents outside of the complaint for consideration on a motion to dismiss, the Court may, (1) "exclude the additional material and decide the motion on the complaint alone," or (2) "convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material," provided the parties are given a reasonable opportunity to present all the material that is pertinent to the motion. *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013) (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir.1988); Fed. R. Civ. P. 12(d); *Pratt v. City of New York*, No. 11 Civ. 8355, 929 F. Supp. 2d 314, 316 (S.D.N.Y. Mar. 14, 2013)). When converting the motion to one for summary judgement, the court must ensure that parties are provided with notice to ensure that a reasonable opportunity to present all the

material that is pertinent to the motion. Fed R. Civ. P. §12 (d).

**RULE 56**

Rule 56 provides: "The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record,

"including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it

believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute

by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed.

R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the

non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).

Even when a summary judgment motion is not opposed, the moving party must nonetheless

"show[ ] that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp.*, 477 U.S. at 322 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 248. "Before summary judgment may be entered, the district court must

ensure that each statement of material fact is supported by record evidence sufficient to satisfy the

movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189,

194 (2d Cir. 2014).

While it is well settled "that a court is obligated to afford special solicitude to *pro se* litigants,"

"[t]he solicitude afforded to *pro se* litigants takes a variety of forms," most often consisting of "liberal

construction of pleadings, motion papers, and appellate briefs." *Tracy v. Freshwater*, 623 F.3d 90, 101

(2d Cir. 2010). As the Second Circuit has expressed, this special solicitude is especially relevant in the

context of motions for summary judgment. *Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir.

2014) ("[W]e are less demanding of [*pro se*] litigants generally, particularly where motions for summary judgment are concerned"). It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under . . . Federal law[ ] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). DOCCS has established a three-tier administrative grievance process which must be fully exhausted to final a disposition prior to commencing a suit in federal court as required by 7 N.Y.C.R.R § 701.5. The first tier of the process requires an inmate to "submit a complaint to the clerk within 21 days of an alleged occurrence." 7 N.Y.C.R.R § 701.5(a). Following issuance of a decision by the IGRC, an inmate may file an appeal to the superintendent "within seven calendar days after receipt of IGRC's written response." 7 N.Y.C.R.R. § 701.5(c). The third and final tier requires a submittal to the CORC "within seven calendar days after receipt of the superintendent's written response." 7 N.Y.C.R.R. § 701.5(d).

The Supreme Court has construed PLRA to require "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). As applicable here, a proper exhaustion is attained when an inmate appeals the IGRC's determination to CORC and receives a final decision regarding his grievance. *See Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) (citing *Partee v. Grood,* No. 06 Civ. 15528, 2007 WL 2164529, at *3 (S.D.N.Y. Jul. 25, 2007); *Mendez v. Artuz*, No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002). The mere filing of an appeal to CORC, by itself, is insufficient. *Id.* The "failure to exhaust is an affirmative defense under the PLRA," however, inmates are not required to

specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). The affirmative defense of non-exhaustion "must be pled by defendants." *Martinez v. P.A. Williams R.*, 349 F. Supp. 2d 677, 682 (S.D.N.Y. 2004) (citing *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999)). Generally, courts may not grant a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies unless non-exhaustion is clear from the face of the complaint and incorporated documents. *See McCoy v. Goord*, 255 F.3d 233, 251 (S.D.N.Y. 2003); *Hilbert v. Fischer*, 2013 WL 4774731, at *3 (S.D.N.Y. Sept. 5, 2013).

Liberally interpreting Plaintiff allegations, she attempts to assert claims sounding in interference with religious liberties, retaliation and equal protection. Typically, an inmate's religious-liberty claims are derived from two sources: the First Amendment's Free Exercise Clause and Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C § 2000cc-1. Claims of retaliation are analyzed under the First Amendment and equal protection claims are reviewed under the Fourteenth Amendment. Though Plaintiff's allegations are sufficient to assert plausible claims for interference with religious liberties and retaliation, all of Plaintiff's claims fail as a matter of law.

Courts in this district have held that extrinsic evidence of exhaustion may be considered in three limited circumstances: the standard *pro se* complaint form has a checked box regarding exhaustion; the allegations in the complaint clearly state that the inmate exhausted administrative remedies; or the complaint clearly establishes that the inmate had, in fact, not exhausted administrative remedies. *Williams v. Annucci*, 2018 WL 3148362, at *5 (S.D.N.Y. June 27, 2018); *see also Colón v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (explaining the same proposition); *Wilson v. N.Y.C. Police Dep't*, 2011 WL 1215031 (S.D.N.Y. Feb. 4, 2011) ("in situations where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein."). Plaintiff has incorporated by reference and has attached to her complaint documents related

to her grievance against the Defendant concerning the Chapel Incident and his alleged failure to allow prayer service. Having done so, Plaintiff has placed the exhaustion issue squarely before the Court.

It is well settled that exhaustion is mandatory under the PLRA and the failure to do so is an affirmative defense. *Jones v. Bock*, 549 U.S. at 200. In support of his motion, Defendant submits a declaration from Rachel Seguin, the Assistant Director of the Inmate Grievance Program (IGP), stating that the grievance(s) at issue in this action have not been fully exhausted. (Mem. Law Supp. Def's Mot. Dismiss, ECF No. 22, Attach. 1). Attached to the declaration is a printout from CORC which shows "the grievances referenced in Plaintiff's complaint . . . have not been appealed to CORC, as demonstrated by their absence from the computer printout." (*Id.* at 2, para. 8.) Defendant has therefore demonstrated that Plaintiff has failed to exhaust her administrative remedies, warranting dismissal under Rule 12(b)(6). Similarly, under a Rule 56 analysis, Defendant has demonstrated that no genuine dispute exists as to a material fact, namely that the affirmative defense of failure to exhaust available administrative remedies has been asserted, and that the proffered evidence demonstrates that Plaintiff has failed avail herself of such remedies. There being no material issues of fact, Defendant is entitled to summary judgment warranting dismissal of the complaint.

## CONCLUSION

Based on the foregoing reasons, Defendant's motion to dismiss pursuant to Rule 12(b)(6), and alternatively pursuant to Rule 56, is GRANTED without opposition. The Clerk of the Court is directed to terminate the motion at ECF No. 21 and to terminate the action. Defendant is directed to serve a copy of this Opinion and Order upon Plaintiff, and to show proof of service on the docket.

Dated:   September 8, 2020
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

Page 11  of 12